**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANTHONY J. HAYTON,


                    Plaintiff,


            -v-                              3:23-CV-01054 (AJB/ML)


UNITED PARCEL SERVICE, INC. and
JENNIFER LONG,


                    Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

LAW OFFICE OF EDWARD E. KOPKO               EDWARD E. KOPKO, ESQ.
Attorneys for Plaintiff
202 East State Street, Suite 403
Ithaca, NY 14850

MORAN, KARAMOUZIS LAW FIRM                  ANDREW P. KARAMOUZIS, ESQ.
Attorneys for UPS Defendant
265 Sunrise Highway, Suite 61
Rockville Centre, NY 11570

SCHMOYER REINHARD LLP                       SHANNON BROWN SCHMOYER, ESQ.
Attorneys for UPS Defendant                 RICHARD L. CLIFTON, JR., ESQ.
8000 IH 10 West, Suite 1600
San Antonio, TX 78230

JENNIFER LONG
*Pro Se* Defendant

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION & ORDER**

I.     **INTRODUCTION**

Plaintiff Anthony J. Hayton ("Hayton") seeks damages for gender discrimination, sexual

harassment, hostile work environment, and retaliatory discharge against defendants United Postal

Service, Inc. ("UPS") and his former UPS supervisor Jennifer Long ("Long") under the New

York State Human Rights Law ("NYSHRL").

UPS removed this case from New York Supreme Court, claiming federal question

jurisdiction.  Before the Court is defendant UPS's Motion for Summary Judgment.  For the

reasons below, the Court concludes that it lacks subject matter jurisdiction.  Therefore, UPS's

summary judgment motion is **DENIED AS MOOT**, and the case is **REMANDED** to the

Supreme Court of the State of New York, County of Tompkins.

II.     **BACKGROUND**

In late September 2021, Hayton, a 33-year-old black man, began working for UPS as a

package driver out of its Ithaca, New York hub.  *See* Def.'s Mot. for Summ. J., Ex. F, Dkt. No.

50-9 at 3; Def.'s Mot. for Summ. J., Ex. M., 50-15 at 2.  Hayton asserts he was "an exemplary

employee" (Pl.'s Resp. to Mot. for Summ. J., Dkt. No. 60-1 at 4) yet alleges that two white

drivers, "hired three to four weeks after" him, were regularly assigned better-paying routes,

given more hours, and provided company trucks, while he was left to use a U-Haul.  *See* Def.'s

Mot. for Summ. J., Ex. M, Dkt. No. 50-15 at 2.  Hayton contends that he was subjected to

"different terms and conditions of employment" because of his race and in retaliation for

rejecting sexual advances from his supervisor, defendant Jennifer Long.  *Id.*  When Hayton

"expressed no interest[,]" he says Long "concocted a sham reason" to fire him.  *See* Pl.'s Resp. to

Mot. for Summ. J., Dkt. No. 60-1 at 4.  Hayton's employment ended on January 13, 2022.  Def.'s

Mot. for Summ. J., Ex. M, Dkt. No. 50-15 at 2.

On May 26, 2023, Hayton filed suit in Tompkins County Supreme Court against UPS and

Long.  *See* Compl., Dkt. No. 1-1.  The complaint alleges five claims under the New York State

Human Rights Law ("NYSHRL"): (1) gender discrimination and sexual harassment, (2) hostile

work environment, (3) retaliatory discharge, (4) aiding and abetting sexual harassment and

gender discrimination, and (5) sexual harassment and gender discrimination against a contractor

or consultant.  *See id.* ¶¶ 51–105.

UPS removed the case to the United States District Court for the Northern District of

New York on August 24, 2023.  *See* Notice of Removal, Dkt. No. 1.  UPS answered the

complaint on August 31, 2023 (Dkt. No. 8); Long answered on November 21, 2023.  Dkt. Nos. 8,

19.  Discovery closed on February 13, 2025.  *See* Dkt. No. 45.

The parties met for mandatory mediation on March 19, 2025, but reached no settlement.

*See* Dkt. No. 46.  UPS moved for summary judgment on April 25, 2025.  Dkt. No. 49.  Hayton

responded on May 30, 2025, and UPS replied on June 20, 2025.  Dkt. Nos. 60, 62.

The case was reassigned to this Court on October 6, 2025.  Dkt. No. 63.  UPS's Motion

for Summary Judgment is now before the Court.  Yet before the Court can reach the merits of the

motion, it must first confirm that it possesses jurisdiction.

III.    **STANDARD OF REVIEW**

A.    **Subject Matter Jurisdiction**

"Subject matter jurisdiction is the legal authority of a court to hear and decide a particular

type of case."  *Kingston v. Deutsch Bank Nat. Tr. Co.*, 2013 WL 1821107, at *3 (E.D.N.Y. Apr.

30, 2013).  "Federal courts are courts of limited subject matter jurisdiction; they may exercise jurisdiction only if it is specifically authorized." *Id.*

"It is incumbent on a federal court to determine with certainty whether it has subject matter jurisdiction over a case pending before it." *Allard v. Lowe's Home Ctr., LLC*, 2022 WL 625730, at \*2 (D. Conn. Feb. 11, 2022).  "A federal court's lack of subject matter jurisdiction is not waivable by the parties, and [the court] must address jurisdictional questions before reaching the merits." *Holt v. Town of Stonington*, 765 F.3d 127, 130 (2d Cir. 2014) (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)).

If necessary, a federal court must consider its subject matter jurisdiction *sua sponte*.  *See e.g.*, *Weiss Acquisition, LLC v. Patel*, 2013 WL 45885, at \*1 (D. Conn. Jan. 3, 2013) ("Although neither party has suggested that we lack appellate jurisdiction, we have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte.*") (citing *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)).

## B.    Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Federal district courts are to "construe the removal statute narrowly, resolving any doubts against removability." *Minaudo v. Sunrise at Sheepshead Bay*, 2023 WL 110359, at \*2 (E.D.N.Y. Jan. 5, 2023) (quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)).  "The removing party bears the burden of establishing proper jurisdiction." *Perez v. Foremost Ins. Co.*, 2018 WL 2473573, at \*1 (W.D.N.Y. June 4, 2018)

(citing *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "When a federal court lacks subject matter jurisdiction to adjudicate a removed case, the proper remedy is to remand the case to state court rather than to dismiss the claims." *Metro Chrysler Plymouth, Inc. v. FCA US LLC*, 2022 WL 16834572, at *2 (E.D.N.Y. Nov. 9, 2022) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014)). "That is because, in the absence of subject matter jurisdiction, a federal court is powerless to adjudicate the removed case." *George v. Credit Corp Sols. Inc.*, 2023 WL 7000964, at *2 (E.D.N.Y. Aug. 24, 2023) (internal citations and alterations omitted).

## IV.    DISCUSSION

Federal subject matter jurisdiction is typically based either on diversity of citizenship under 28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331. *See White v. Macaulay*, 2012 WL 3470706, at *1 (D. Vt. Aug. 14, 2012).

Here, there is no diversity of citizenship. Both Hayton and Long were citizens of New York at all relevant times. *See* Compl., Dkt. No. 1-1 ¶¶ 2, 4.

As for federal question jurisdiction, UPS offers two bases in its Notice of Removal.

### 1.    Age Discrimination in Employment Act

The first basis is that Hayton's complaint "expressly pled and swore under the penalty of perjury that there is federal question jurisdiction." Def.'s Notice of Removal, Dkt. No. 1 ¶ 3. Hayton's complaint—filed in *state* court—does appear to invoke the federal Age Discrimination in Employment Act ("ADEA"). *See* Compl., Dkt. No. 1-1 ¶ 5 ("The jurisdiction of the [c]ourt

over this controversy as to enforcement of the provisions of the ADEA, 29 U.S.C. § 626 is based

upon 28 U.S.C. § 1331, as the questions before this [state] [c]ourt are federal questions.").

Yet 28 U.S.C. § 1331 is a *federal* statute granting *federal* courts original jurisdiction over

actions arising under federal law.  *See* 28 U.S.C. § 1331; *see Jado Assocs., LLC v. Suffolk Cnty.*

*Sewer Dist. No. 4- Smithtown Galleria*, 2014 WL 2944086, at \*4 (E.D.N.Y. June 30, 2014)

("[Federal] [d]istrict courts have original jurisdiction of all actions arising under federal law

pursuant to 28 U.S.C. § 1331.  A case arises under federal law for purposes of 28 U.S.C. § 1331

if 'a well[-]pleaded complaint establishes either that federal law creates the cause of action or

that the plaintiff's right to relief necessarily depends on resolution of a substantial question of

federal law.'") (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 678 (2006)).

Section 1331, as a federal procedural mechanism, has no bearing on whether Hayton's complaint

may be brought in a state court.

Regardless, "[a] civil action filed in a state court may be removed to federal court if the

claim is one 'arising under' federal law." *Pratt v. JACC Healthcare Ctr. of Norwich LLC*, 2022

WL 16855976, at \*4 (D. Conn. Nov. 10, 2022) (quoting *Beneficial Nat. Bank v. Anderson*, 539

U.S. 1, 6 (2003)); *see also* 28 U.S.C. § 1441(c).  But Hayton does not assert a claim under the

ADEA, or for that matter, any other federal law.  The ADEA is mentioned only twice in Hayton's

complaint: (1) In its assertion that the state court possesses jurisdiction under Section 1331 to

enforce the ADEA, and (2) in noting that UPS "qualif[ies] as an employer for purposes of the

ADEA and the New York State Human Rights Law." *See* Compl., Dkt. No. 1-1 ¶¶ 5, 7.

That Hayton does not allege an ADEA claim is further evident not only because no such

claim is listed among the five causes enumerated, but also because the complaint contains no

facts suggesting age discrimination of any kind.  *See generally id*.  Nor, as pleaded, could Hayton

have brought a facially plausible ADEA claim: The complaint states he is 33 years old.  *Id.* ¶ 2.

The ADEA protects individuals over the age of 40.  *Delville v. Firmenich Inc.*, 920 F. Supp. 2d

446, 458 (S.D.N.Y. 2013) (citing 29 U.S.C. § 631(a)).

Hayton offers no explanation for his seeming reliance on these federal statutes.  In fact,

he does not acknowledge that the complaint mentions them.  Instead, in opposition to the

pending motion, he states only what has been clear from the start: "Hayton . . . asserts claims

only under the New York State Human Rights Law[.]"[1]  *See* Pl.'s Resp., Dkt. No. 60-1 at 4.

### 2.      Section 301 of the Labor Management Relations Act

No matter, says UPS, as it offers its second basis for removal jurisdiction.  According to

UPS's Notice of Removal, one or more of Hayton's state-law NYSHRL claims are completely

preempted by Section 301 of the federal Labor Management Relations Act ("LMRA"), thereby

making this case one that arises under federal law.  *See* Notice of Removal, Dkt. No. 1 ¶ 2.

Section 301 endeavors to ensure uniform interpretation of collective bargaining

agreements ("CBAs") nationally.  *Guzman v. First Chinese Presbyterian Cmty. Affs. Home

Attendant Corp.*, 520 F. Supp. 3d 353, 359 (S.D.N.Y. 2021).  "Federal law preempts [some] state

claims to further the federal goal of developing a uniform federal common law to govern labor

disputes, 'lest common terms in bargaining agreements be given different and potentially

inconsistent interpretations in different jurisdictions.'"  *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d

Cir. 2003) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)).

Section 301 will completely preempt a state-law claim if the claim "is either (1) 'founded

directly on rights created by collective-bargaining agreements' or (2) 'substantially dependent on

---

[1] Hayton's Charge of Discrimination, filed with the New York State Division of Human Rights prior to this suit, asserts that the facts underlying this matter "were in willful violation of Title VII of the Civil Rights Act[.]"  *See* Dkt. Nos. 15-5.  Yet no such claim appears in the complaint Hayton actually filed in state court.  *See generally* Compl., Dkt. No. 1-1.

7

analysis of a collective-bargaining agreement[.]'" *Guzman*, 520 F. Supp. 3d at 359–360 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394–95 (1987)).  This "'unusual pre-emptive power' . . . create[s] federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994)).

Still, "[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted by [S]ection 301." *Fernandez v. Pinnacle Grp. NY LLC*, 2023 WL 2525996, at *4 (S.D.N.Y. Mar. 15, 2023).  "If a plaintiff brings an action to enforce a state[-]law rule or established right or obligation that is independent of a labor contract, that claim is not preempted." *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 421 (S.D.N.Y. 2013) (citing *Vera*, 335 F.3d at 115) (internal alterations omitted).  And "[e]ven if resolving a dispute under a state-law claim and the collective-bargaining agreement 'would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'" *Severin v. Project OHR, Inc.*, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412–13 (1988) ("The operation of . . . antidiscrimination laws does, however, illustrate the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state[-]law violation dependent upon the terms of the private contract.  For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper

interpretation of state law.  In the typical case a state tribunal could resolve either a

discriminatory or retaliatory discharge claim without interpreting the . . .  language of a

collective-bargaining agreement.").

In its Notice of Removal, UPS contended that "in all five of his NYSHRL causes of

action, Plaintiff Hayton incorporated his allegations about being denied seniority; the type of

vehicle he was assigned to drive; the amount of work he was given; changes in his work tasks;

being denied a helper; not being given days off; a union steward not being present at his

termination; the union not being notified of his termination; and about not being given a

termination notice in writing."  Notice of Removal, Dkt. No. 1 ¶ 19.  According to UPS, these

assertions "require constructing provisions of the CBA and also make Plaintiff Hayton's

NYSHRL claims predicated on rights founded in the CBA."  *Id.* ¶ 20.  UPS further stated in the

removal notice that it "intends to dispute Plaintiff Hayton's assertion of rights under the CBA to

color his claims regarding the 'terms, conditions, and privileges' of his employment."  *Id.*

Whatever those intentions were, UPS never followed through.  Instead, it merely

appended the 266-page CBA as Exhibit D to its instant motion, offering no context for the CBA's

relevance.  *See* Def.'s Mot. for Summ. J., Ex. D, Dkt. Nos. 50-4 – 50-7.

UPS cites to the CBA only three times in its Statement of Material Facts ("SOMF").  *See*

Def.'s Statement of Material Facts, Dkt. No. 50; *see also* L.R. 56.1(a) ("Any motion for

summary judgment shall contain a separate Statement of Material Facts.  The Statement of

Material Facts shall set forth . . . a short and concise statement of each material fact about which

the moving party contends there exists no genuine issue.").  First, UPS notes that the company's

"commitment to equal opportunity and non-discrimination" appears not only in its internal

policies, but also in the CBA.  SOMF ¶ 2 (citing Ex. D, Art. 36).  Second, it states that work

9

performed between November 10 and January 15, under the CBA, does not count toward seniority. SOMF ¶ 5 (citing Ex. D, Art. 57). Third, it points to a single instance—where Hayton appears to have forgotten to punch out for lunch—as a potentially qualifying terminable offense under the CBA. SOMF ¶ 10 (citing Ex. A ¶ 11 and Ex. H ¶ 8).

UPS's briefs offer no further consideration of the CBA. Indeed, neither its memorandum supporting summary judgment nor its corresponding reply mentions the CBA. *See generally* Dkt. Nos. 49-1, 62. In fact, UPS asserts that Hayton was "a seasonal, non-union employee"—a contention that, on its face, only further obfuscates any purported relevance of the CBA. *See* Def.'s Mot. for Summ. J., Dkt. No. 49-1 at 17; *see also* Def.'s Mot. for Summ. J., Ex. A, Brian Hughes Decl., Dkt. No. 50-1 ¶ 8 ("These temporary employees are typically released at the end of the peak period. They are not part of the bargaining unit represented by the . . . Teamsters (the Union)[.]").

The only three paragraphs in UPS's SOMF that even remotely allude to the CBA are barely germane.

In its reply, UPS cites SOMF Paragraph 5 to argue that Hayton's "seasonal" status explained his non-retention, as with "80% of other seasonal employees" hired for the holiday period. *See* Def.'s Reply, Dkt. No. 62 at 9 (citing SOMF ¶¶ 5–6). And in its underlying motion, UPS relies on the same paragraph to assert that Hayton was not an independent contractor or consultant. *See* Def.'s Mot. for Summ. J., Dkt. No. 49-1 at 22 (citing SOMF ¶ 5).

Neither brief cites SOMF ¶ 2. Nor would it matter if UPS had: As the company acknowledges, its "commitment to equal opportunity" is not dependent on the CBA. *See* SOMF ¶ 2.

UPS emphasizes Hayton's alleged "time theft" in its briefs. *See* Def.'s Mot. for Summ. J., Dkt. No. 49-1 at 4 ("Yet, after . . . being admonished for time theft for not clocking out for breaks . . . Hayton was not retained at the end of peak season, along with 80% of other seasonal employees."); *id.* at 18 ("[Of] [t]he three seasonal drivers who were retained[,] none had . . . timekeeping concerns[.]"); Def.'s Reply, Dkt. No. 62 at 1 ("[Hayton] was flagged for time theft[.]").

However, UPS provides evidence of merely a single instance—during Hayton's first month with the company—in which he and his helper did not clock out for a half-hour- to hour-long lunch. *See* Def.'s Mot. for Summ. J., Ex. A, Brian Hughes Decl., Dkt. No. 50-1 ¶ 11; Def.'s Mot. for Summ. J., Ex. H, Jacob Smith Decl., Dkt. No. 50-11 ¶¶ 6–7; *see also* Def.'s Mot. for Summ. J., Ex. G, Anthony Hayton Depo ("Yes[,] we stopped to get pizza and I forgot to clock out.").

Discussing this sole occurrence in SOMF Paragraph 10, UPS highlights that "[a]lthough such failure to accurately report time is typically treated as a terminable offense under the applicable collective bargaining agreement, [UPS] decided to handle the incident with retraining due to Hayton's seasonal status." SOMF ¶ 10. Even assuming that such a time infraction would be typically treated as a terminable offense under the CBA and that the single alleged instance qualifies, UPS chose a different, unrelated remediation. One that—by UPS's own framing of the matter—indicates the irrelevance of the CBA here, "due to Hayton's seasonal status." *Id.*

Nowhere does UPS explain the role or relevance, if any, that the CBA plays in Hayton's claims or their adjudication. As UPS correctly notes, the Court need not comb through the record to locate support for a party's position. *See* Def.'s Reply, Dkt. No. 62 at 3 (citing *Amerio v. Gray*, 2019 WL 5307248, at *2 (N.D.N.Y. Oct. 21, 2019)). Similarly, "it is not th[e] Court's

11

responsibility to raise and make counsel's arguments for them." *Flores v. Tryon*, 2017 WL 3705124, at \*3 n.4 (W.D.N.Y. Aug. 28, 2017); *see also Nqadolo v. Care at Home, LLC*, 2025 WL 2432612, at \*5 (D. Conn. Aug. 22, 2025) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

Even so, the Court has thoroughly reviewed the record. Put simply, UPS has not shown, and the Court has not found support in the record for the proposition, that any of Hayton's claims are either founded directly on rights created by a collective bargaining agreement or substantially dependent on one's interpretation.

Because Hayton's claims arise solely under state law, complete diversity does not exist, and neither Hayton nor UPS offers any other cognizable basis for federal jurisdiction, the Court lacks subject matter jurisdiction and must remand this case without considering its underlying merits. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## V. CONCLUSION

The Court concludes that removal of this action was improper. Thus, the action is **REMANDED** to the Supreme Court of the State of New York, Tompkins County, and defendant UPS's Motion (Dkt. No. 49) is **DENIED AS MOOT**. The Clerk of Court is directed to send a copy of this order to that court and to close the case. All pending matters are terminated.

  **SO ORDERED.**

  Dated: December 11, 2025
    Utica, New York

               Anthony J. Brindisi
               U.S. District Judge

12